IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN K. BINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:12-3238-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff John Bingham ("Bingham") seeks judicial review of the Commissioner of Social Security's denial of his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. The Administrative Law Judge ("ALJ") found Bingham had multiple severe impairments but retained the residual functional capacity ("RFC") to perform some work and that under the Medical-Vocational Rules he was not disabled. Bingham contends he has been disabled since April 16, 2008, the date he underwent lumbar spinal surgery.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

Plaintiff filed his application for disability insurance benefits and SSI benefits on September 29, 2008, when he was forty-one years-old, alleging a disability onset date of April 16, 2008. The Commissioner denied his applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held two hearings and on December 23, 2010, issued his decision holding Plaintiff was not disabled as defined in the Act.

Plaintiff appealed the denial to the Appeals Council of the Social Security Administration and submitted additional evidence. On March 8, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be

expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2] Plaintiff contends the ALJ erred at step four by: (1) failing to give controlling weight to the opinion of a treating physician; (2) failing to properly assess his RFC; and (3) failing to find his testimony credible. Plaintiff also claims the Appeals Council erred in failing to consider the allegedly "new and material" evidence he submitted.

**A.     The ALJ did not err in giving Dr. Smith's opinion little weight.**

Plaintiff argues the ALJ improperly discredited the opinion of his primary treating physician, Dr. Kyle Smith, D.O., a general practitioner who has treated Plaintiff intermittently for almost three years, mostly prescribing powerful pain medication for Plaintiff's back. Dr. Smith also submitted a brief note and a medical source statement opining Plaintiff's functionally capacity was dramatically limited. R. at 535, 825-28. Dr. Smith claimed, for example, that Plaintiff could not lift or carry any weight frequently, and he could lift or carry five pounds only occasionally. *Id.* Ultimately, the ALJ embraced a consultative examination report completed by Dr. Jeffrey Woodward, M.D., who found Plaintiff's ability to work was not nearly as limited. For instance, Dr. Woodward found Plaintiff retained the ability to lift or carry twenty-pounds occasionally.

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

The Court holds the ALJ did not err in discrediting Dr. Smith's opinion and giving greater weight to Dr. Woodward's opinion. Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation omitted). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques or is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *See Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Here, the ALJ discounted Dr. Smith's opinions for a number of good reasons. R. at 18-20. As the ALJ observed, both Dr. Smith's April 7, 2009, note and his May 26, 2010, medical source statement were conclusory, did not cite any specific clinical findings to support the extreme limitations suggested therein, and were not supported by Dr. Smith's own treatment records or the other records in this case. R. at 18-20, 535, 825-28. The ALJ properly noted that Dr. Smith failed to note any atrophy, loss of muscle strength, other clinical findings that

4

explained his recommendation that Plaintiff must use a cane or walker. R. at 18-20, 535, 546, 825-28, 847; *see, e.g., Strongson v. Barnhart,* 361 F.3d 1066, 1070-71 (8th Cir. 2004) (discounting treating physician's opinion that was "without explanation or support from clinical findings" and "not internally consistent with [the doctor's] own treatment notations.").

The ALJ also did not err in discounting Dr. Smith's opinions because they appeared to be based primarily on Plaintiff's subjective complaints, rather than objective tests or findings. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). As the ALJ noted, Dr. Smith's uncritical reliance on Plaintiff's subjective reports was problematic since Plaintiff tended to magnify his symptoms. R. at 18, 842-43, 845.

The records of another treating physician, Dr. Ellen Nichols, M.D. (the surgeon who performed Plaintiff's lumbar spinal surgery), also calls into question Dr. Smith's findings. Plaintiff claims he became disabled on the date he underwent spinal surgery, April 16, 2008. Four months later, on August 7, 2008, Dr. Nichols reported Plaintiff was capable of returning to work with the restriction that he should not lift over fifty pounds until September. R. at 20, 476-83. The ALJ found no reason to discredit Dr. Nichols' opinion. R. at 20. If Plaintiff and Dr. Smith's allegations of disabling symptoms were true, one would expect Dr. Nichols to have imposed significant work-related restrictions on Plaintiff. The fact that Dr. Nichols put virtually no functional restrictions on Plaintiff's activities affirms the ALJ's decision to discredit Dr. Smith's opinion. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

Finally, the ALJ did not err in giving greater weight to Dr. Woodward's report because it was consistent with the overall record. R. at 16-19, 831-46. While an opinion from a consultative examiner does not, standing alone, constitute substantial evidence, *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011), it is also well-settled that "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by

better or more thorough medical evidence." *Brown v. Astrue,* 611 F.3d 941, 951 (8th Cir. 2010). Dr. Woodward specializes in physical medicine, rehabilitation, and evaluating impairments and limitations. R. at 19, 846. His opinion took into account the results of Plaintiff's MRI and x-ray studies, as well as the results of his own physical examination of the Plaintiff which indicated he was exaggerating his symptoms. R. at 19, 831-46. Accordingly, the ALJ did not err by giving Dr. Woodward's opinion substantial weight.

**B.     The ALJ properly formulated Plaintiff's RFC.**

Plaintiff's second argument—that the ALJ improperly formulated his RFC—is predicated on the success of his first argument that the ALJ erred in giving Dr. Woodward's opinion substantial weight. Plaintiff contends: (1) Dr. Woodward's assessment is not substantial evidence; (2) the ALJ's rejection of Dr. Smith's opinion that he needs a cane or a walker is arbitrary and capricious; (3) the ALJ's discussion does not withstand scrutiny; (4) the ALJ failed to address his claims of disabling pain; (5) because the ALJ erred in relying on Dr. Woodward's opinion, the hypothetical posed to the vocational expert ("VE") based on it was incomplete and inaccurate; and (6) therefore the VE's answer to the hypothetical does not constitute substantial evidence (Doc. 45 at 48-49).[3]

For the reasons discussed above, the ALJ did not err in giving substantial weight to Dr. Woodward's opinion. Thus, the Court finds no merit to the first three assertions. With respect to the fourth argument, as discussed below, the ALJ rejected these claims while evaluating Plaintiff's credibility. Finally, since the ALJ did not err in embracing Dr. Woodward's opinion, the hypothetical question and answer based on it were not fatally flawed as Plaintiff suggests, thus there is no merit to Plaintiff's fifth and sixth arguments.

---

[3] The Court recognizes that Plaintiff's fifth and sixth arguments arguably go to the ALJ's finding at step five in the sequential evaluation process that a significant number of jobs exist in the national economy which Plaintiff can perform. Although this arguments are somewhat out of place here since Plaintiff's other arguments concern whether the ALJ erred at step four, the Court will address the fifth and sixth arguments in this section.

**C.     The ALJ did not err in analyzing Plaintiff's credibility.**

Next, Plaintiff argues the ALJ improperly discounted his claims of debilitating symptoms on the basis of the ALJ's observations of his testimony and demeanor during the administrative hearing. Plaintiff argues the ALJ erred in not finding him disabled based on his failure to change position during his administrative hearing, an application of the so-called "sit and squirm" test which the Eighth Circuit has cautioned is not dispositive of a claimant's credibility. *Muncy v. Apfel*, 247 F.3d 728, 736 (8th Cir. 2001). Plaintiff notes that he did, in fact, ask if he could stand-up during the hearing. R. at 18. Plaintiff also denies the ALJ's assertion that during the hearing his testimony was "evasive or vague at times," he left the impression that he was "less than entirely candid," or he exaggerated his symptoms. R. at 17. Finally, Plaintiff contends the ALJ's credibility determination is not supported by substantial evidence on the record.

To begin, the Court holds the ALJ erred in finding Plaintiff did not move during the hearing and partly discrediting his credibility for this reason. The transcript indicates Plaintiff asked, "Judge, can I stand up for a minute?" and the ALJ replied, "Certainly just try to keep your voice up so we can hear you." R. at 65. Although the ALJ cited Plaintiff's alleged failure to move during the hearing as one of many reasons to discredit Plaintiff's credibility, the impact of this error is negligible. The ALJ gave this reason "slight weight" in making his credibility determination, recognizing that "the hearing was short-lived and [the failure to move during the hearing] cannot be considered an indicator of the claimant's overall level of pain on a day-to-day basis." R. at 18.

Plaintiff's remaining arguments are meritless. Other evidence on the record supports the ALJ's finding. The ALJ noted that Plaintiff testified at the October 2010 hearing that his legs were getting weaker and he had to use a walker every day when he stood or walked. R. at 17, 41. Plaintiff then testified that he had begun to use the walker "Yesterday," when he saw the

7
Case 6:12-cv-03238-DGK   Document 19   Filed 09/23/13   Page 7 of 10

doctor.  But when the ALJ asked whether his doctor had actually seen him "yesterday," Plaintiff responded, "Not yesterday, no," and that the doctor had last examined him "last month."  R. at 41.  Consequently, the ALJ did not err in concluding that Plaintiff's testimony during the hearing detracted from his overall credibility.  *See Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (noting "[t]he ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations.").

Additionally, the ALJ's conclusion that Plaintiff's self-reported claims of debilitating symptoms were not credible is supported by the record as a whole.  Plaintiff's testimony that he was unable to care for himself conflicted with the function report he submitted in support of his disability claim which indicated he was independent for his self-care, helped with laundry, watched television, and crocheted.  R. at 17-18, 228-35.  While a claimant need not be bedridden to be disabled, "[a]llegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."  *Davis v. Apfel*, 239 F.3d 962, 966-67 (8th Cir. 2001).

The ALJ also properly considered Plaintiff's sporadic work history before his alleged disability onset date, which the ALJ found called into question Plaintiff's motivation to work.  R. at 18.  An ALJ may discount a claimant's subjective complaints if he appears to be motivated to qualify for disability benefits.  It is well-settled that "a lack of work history may indicate a lack of motivation to work rather than a lack of ability."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

Consequently, substantial evidence supports the ALJ's credibility determination.

**D.  The ALJ's decision is supported by substantial evidence on the record as a whole, including the evidence Plaintiff submitted to the Appeals Council after the ALJ issued his decision.**

Finally, Plaintiff argues the Appeals Council erred by not considering the medical records he submitted after the ALJ rendered his decision.  The regulations provide that "[i]f new and

material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). To be material, new evidence must be "non-cumulative, relevant, and probative of a claimant's condition during the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir. 2002) (*internal alteration and quotation omitted*). "Where, as here, the Appeals Council considers new evidence but denies review, [the reviewing court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 900 (8th Cir. 2007).

In the present case, although Plaintiff asserts he submitted "new and material evidence" to the Appeals Council, the evidence submitted was neither new nor material. Some of the medical records Plaintiff submitted to the Appeals Council actually pre-date the ALJ's decision, and Plaintiff has not addressed why they were not made a part of the record before the ALJ issued his decision. R. at 1044-1128, 1163-69. As for the records documenting Plaintiff's medical care after the ALJ rendered his decision, they are not material to the time period before the ALJ issued his opinion. Far from establishing a proper basis for remand, most of the records bolster the ALJ's decision. Plaintiff's post-decision diagnostic work-ups were largely normal, with numerous normal or negative physical examinations, EEG, EKG, lumbar x-rays, and cervical spine and brain MRI studies recorded by his treating physicians. R. at 930-31, 934, 939-40, 977, 985-87, 998, 1016, 1019, 1179, 1183, 1199, 1202, 1205, 1239-43. The new records also confirm Plaintiff was being less than candid with his doctors in order to obtain disability benefits. Dr. Jerry Carter, M.D., suspected Plaintiff of malingering, noting he was "attempting to obtain disability, which can influence reliability of self-report." R. at 935. On another occasion,

Dr. Carter observed there was a volitional aspect to Plaintiff's behaviors, and the likely motive was manipulating his partner and attempting to gain disability benefits.  R. at 1000.

Accordingly, the Court holds the Appeals Council did not err in declining to remand this case to the ALJ for additional consideration.

**Conclusion**

The Court finds the Commissioner's determination is supported by substantial evidence on the record.  Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     September 23, 2013              /s/ Greg Kays
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT